**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>v.<br><br>Gary Steven Christensen,<br><br>   Defendant. | No. CR-14-08164-PCT-DGC<br><br>**ORDER** |

Defendant, Dr. Gary Steven Christensen, has filed a motion in limine to admit certain evidence at trial. Doc. 61. The motion has been fully briefed and the Court heard oral argument on April 27, 2016. Docs. 64, 67. For the reasons that follow, the Court will deny the motion.

**I.   Background.**

On September 16, 2014, a grand jury indicted Defendant on fourteen violations of federal income tax law arising from his alleged failure to pay taxes for the years between 2004 and 2010. Doc. 1 (charging seven counts of evading tax assessments in violation of 26 U.S.C. § 7201, five counts of filing false tax returns in violation of 26 U.S.C. § 7206(l), and two counts of willful failure to file returns in violation of 26 U.S.C. § 7203). The parties entered into plea negotiations, during which a draft of a proposed plea agreement was circulated. The draft would have provided for dismissal of the felony charges in exchange for Defendant's plea of guilty to three misdemeanors and his payment of all federal and state taxes owed from 1997 to 2014. *See* Doc. 61-2.

Negotiations fell through, and the parties are now proceeding to trial. Defendant contends that he rejected the possible plea agreement because he could not honestly admit to having committed tax crimes, even misdemeanors. Defendant maintains that he believes the tax laws do not apply to him, and that he therefore never willfully violated any of them.

Defendant's motion in limine asks the Court to admit the following categories of evidence at trial: (1) the plea negotiations between the parties, including the possible plea to misdemeanor offenses; (2) privileged communications between Defendant and his lawyer concerning the plea negotiations, including Defendant's assertion to his attorney that he could not honestly admit that he willfully violated federal tax laws; and (3) evidence of Defendant's pro per filings in which he has asserted (or will assert) to the Court that he is not subject to the tax laws and jurisdiction of the Court. Doc. 61. Defendant contends that this evidence will show that he holds a good faith belief that he is not subject to federal tax law, a belief that negates the willfulness element of the charged offenses. *See Cheek v. United States*, 498 U.S. 192, 202 (1991). The government argues that evidence related to the plea negotiations is inadmissible under Federal Rule of Evidence 408 and that all of the evidence Defendant seeks to admit is irrelevant and inadmissible under Rule 403 and the hearsay rules.

## II.     Rule 408.

Rule 408(a) provides that evidence related to compromise negotiations is not admissible "to prove or disprove the validity . . . of a disputed claim." Rule 408(b) provides that such evidence is admissible for "another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." The purpose of Rule 408 is to promote "the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408 (Advisory Committee Note).

The government argues that Defendant is trying to introduce evidence of plea negotiations to "disprove the validity . . . of a disputed claim" – the criminal charges in

this case – which is precisely what Rule 408(a) forbids. Doc. 64 at 3. Defendant counters that he is seeking to introduce this evidence for "another purpose" as permitted by Rule 408(b) – to show that he sincerely believes he is innocent.

Defendant cites no case in which a court has admitted evidence of a rejected plea offer to show an innocent state of mind, and the Court has found none. The closest analogy the Court has found is *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990), which held that a defendant's rejection of an offer of complete immunity was admissible for the purpose of showing a "consciousness of innocence." *Id.* at 690-91. But *Biaggi* specifically distinguished this decision from rejection of a plea agreement, explaining that there is a marked difference between immunity offers and plea negotiations. *Id.* at 690. "When a defendant rejects an offer of immunity on the ground that he is unaware of any wrongdoing about which he could testify, his action is probative of a state of mind devoid of guilty knowledge." *Id.* at 690. Although rejection of a plea agreement "could also evidence an innocent state of mind," the Second Circuit found that "the inference is not nearly so strong as rejection of an opportunity to preclude all exposure to a conviction and its consequences." *Id.* at 691. "A plea rejection might simply mean that the defendant prefers to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea." *Id.* *Biaggi* thus permitted evidence of rejection of immunity, but cast serious doubt on admission of a rejected plea offer.

At least one court has followed *Biaggi*'s holding that rejection of an immunity offer is admissible, *United States v. Maloof*, 205 F.3d 819, 825 (5th Cir. 2000), but even the Second Circuit has refused to extend *Biaggi* to rejection of a plea agreement. *See United States v. Goffer*, 721 F.3d 113, 129 (2d Cir. 2013) (the fact "'that defendant preferred to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea,'" is not probative of his innocence) (quoting *Biaggi*, 909 F.2d at 691). A number of other cases have refused to extend *Biaggi* to rejections of plea offers and deferred prosecution agreements. *See United States v. Greene*, 995 F.2d 793, 798 (8th Cir. 1993) (refusing to apply *Biaggi* to plea agreement); *United States v.*

*Geisen*, 612 F.3d 471, 496 (6th Cir. 2010) (refusing to apply *Biaggi* to deferred prosecution agreement); *United States v. Japalucci*, No. 02:07-CR-363, 2008 WL 1781138, at *1 (W.D. Pa. Apr. 17, 2008) (refusing to apply *Biaggi* to plea agreement); *United States v. Wilson*, No. 98 CR. 640 (DLC), 1998 WL 770561, at *1 (S.D.N.Y. Nov. 4, 1998) (refusing to apply *Biaggi* to deferred prosecution agreement).

In this case, Defendant rejected a plea agreement that would have required him to plead guilty to three misdemeanors and pay more than $500,000 in overdue taxes. Thus, "[t]his [is] not a case where the defendant [would have been] permitted to walk away scot free and declined to do so out of a strong belief of his innocence." *Goffer*, 721 F.3d at 129. Rejection of the plea offer is not so clearly probative as was the rejection of immunity in *Biaggi*. This Court, like the cases discussed above, concludes that *Biaggi* should not be extended to Defendant's plea negotiations with the government.

Furthermore, the policy underlying Rule 408 is clear. The rule seeks to promote candid settlement talks. "The benefits of such a policy include the reduction of court congestion and of expenditures for courts by avoiding unnecessary lawsuits, and the placing of the conduct of trials on a more ethical footing by the insistence on a modicum of fair play in pretrial maneuvers." 2-408 Weinstein's Federal Evidence § 408.02[1] (2015). The rulemakers have concluded that "[a] broad exclusionary rule is required to achieve such goals." *Id.* Needless to say, prosecutors would be reluctant to offer compromise pleas if defendants who reject them could place the offered pleas before the jury either as evidence of the defendants' innocence or evidence of weakness in the government's position. As the Eighth Circuit explained in *United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir. 1976):

> Plea bargaining has been recognized as an essential component of the administration of justice. "Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257 (1971). If such a policy is to be fostered, it is essential that plea negotiations remain confidential to the parties if they are unsuccessful. Meaningful dialogue between the parties would, as a practical matter, be impossible if either party had to assume the risk that plea offers would be admissible in evidence.

Although Rule 408(b) permits the introduction of compromise negotiations for "another purpose," the Court cannot conclude that Defendant's proposed purpose falls within this exception. Defendant's purpose would be to disprove the government's claims in this case, precisely what Rule 408(a) prohibits. Admittedly, Defendant's proposed evidence would not appear to be the kind that Rule 408(a) normally has in mind – an admission made in settlement talks that undermines the validity of a claim. But it nonetheless would be admitted for the purpose of disproving the government claims and not, as Rule 408(b) requires, for "another purpose." What is more, the exception in Rule 408(b) should not be applied so liberally as to defeat the purpose of the rule. As one respected commentator has noted:

> [C]are should be taken that an indiscriminate application of this "exception" to Rule 408 does not result in undermining the rule's public policy objective. The almost unavoidable impact of the disclosure of such evidence is that the jury will consider the offer or agreement as evidence of a concession . . . . The trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations, and has broad discretion as to whether to admit evidence of settlement negotiations offered for another purpose.

2-408 Weinstein's Federal Evidence § 408.08[1] (2015) (footnotes and quotation marks omitted).

Courts have held that evidence of compromise negotiations may be admitted to shed light on a party's knowledge or state of mind at the time of the negotiations, but only where this information is directly relevant to a disputed claim. *See Kraft v. St. John Lutheran Church of Seward, Neb.*, 414 F.3d 943, 947 (8th Cir. 2005) (evidence of settlement negotiations was properly admitted to establish the date when plaintiff discovered his claim); *United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (evidence of settlement of civil claim was properly admitted in criminal case to show that defendant was on notice that his conduct was unlawful); *Spell v. McDaniel*, 824 F.2d 1380, 1400 (4th Cir. 1987) (evidence of prior settlement negotiations was properly admitted to show

that the City was aware of pattern or practice of civil rights violations by police department). Unlike these cases, Defendant's knowledge and state of mind at the time of the plea negotiations, which occurred some five years after his last alleged tax-law violation, does not directly show his state of mind in earlier years.

### III.     Rules 401 and 403.

Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Defendant argues that his statements to his attorneys and his pro per filings are relevant because they "strongly suggest[] he holds a good faith belief that he was acting in compliance with the law." Doc. 61 at 4. The government counters that all of the evidence Defendant seeks to introduce is irrelevant because it relates to his state of mind in 2015 and 2016, whereas the most recent charged offense occurred in 2010. Doc. 64 at 4-5. The government further argues that even if this evidence is relevant, it is excludable under Rule 403. *Id.* at 5-8.

On one hand, Defendant's current state of mind may be somewhat probative of his state of mind between 2005 and 2011, but only weakly so, given the likelihood that his thinking has evolved over this eleven-year period. *See State v. Woodsum*, 624 A.2d 1342, 1344 (N.H. 1993) ("a defendant's posture in plea negotiations at a date after the alleged offense . . . is at best weak evidence of the defendant's state of mind at the time of the alleged crime"); *cf. Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 618-19 (7th Cir. 1993) (Easterbrook, J., dissenting) ("Even for witnesses who seek to report accurately, cognitive dissonance produces a remarkable consonance between events as they recall them and their contemporary interests."). On the other hand, the evidence Defendant seeks to introduce is likely to confuse matters during trial by introducing the complexities

of plea negotiations and focusing attention on what Defendant believes now, some five years after the most recent alleged offense. Some of the cases cited above have noted this concern. *Geisen*, 612 F.3d at 497 (even assuming defendant's rejection of deferred prosecution agreement suggested "consciousness of innocence," his decision was properly excluded because its probative value was limited and substantially outweighed by the risk of confusing the issues); *Japalucci*, 2008 WL 1781138, at *2 ("The Court further notes that it appears that any introduction of a rejection of a possible plea agreement would likely confuse the issues because the jury would have to understand the calculus likely undertaken by the defendant and his counsel to reject the plea offer, which would in turn require the jury to be informed as to the application of the Sentencing Guidelines and the statutory mandatory minimum and maximum penalties. Such an exposition would lead to confusion and substantially outweigh the limited probative value of the evidence.").

Admitting evidence of the government's position in plea negotiations would also unfairly prejudice the government's position at trial. The jury might wonder why the government considered pleas to misdemeanors when it is arguing that the jury can convict Defendant of multiple felonies based proof beyond a reasonable doubt. *Id.* at *2; *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.").

The same concerns apply to the other evidence Defendant proposes to admit. Statements he made to counsel during plea negotiations would raise all of the confusion concerns described above. Statement he has made (or will make) to the Court in pro per motions would also be confusing to the jury, as they set forth Defendant's complicated and incorrect views of the federal tax laws and federal court jurisdiction.

**IV.     Conclusion.**

The Court concludes that evidence of plea negotiations is precluded by Rule 408.

The Court also concludes that evidence of plea negotiations, Defendant's statements to his counsel in plea negotiations, and Defendant's pro per filings is properly excluded under Rule 403 because the relevancy of such evidence is substantially outweighed by the risk of jury confusion, wasting time at trial, and unfair prejudice. Given these conclusions, the Court need not reach the government's hearsay objections.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 4/6/16.

**IT IS ORDERED** that Defendant's motion in limine (Doc. 61) is **denied.**

Dated this 3rd day of May, 2016.

_____
David G. Campbell
United States District Judge