**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Gary Steven Christensen,<br><br>　　　　　　　Defendant. | No. CR14-08164-PCT-DGC<br><br>**ORDER** |

The government has filed a motion in limine to prevent social psychologist Dr. Michael J. Wood from presenting certain testimony. Doc. 48. The motion has been fully briefed (Docs. 57, 66), and the Court held oral argument on May 3, 2016. For the reasons that follow, the Court will grant the motion in part and deny it in part.

**I.     Background.**

Defendant is charged with fourteen violations of federal income tax law based on his alleged failure to pay taxes from 2004 through 2010. Doc. 1. At trial, Defendant intends to argue that he holds a good faith belief that he is not subject to federal tax law, and that this belief negates the willfulness element of the charged offenses. *See Cheek v. United States*, 498 U.S. 192, 202 (1991). The defense intends to call Dr. Michael J. Wood, a social psychologist who interviewed and evaluated Defendant in February and April 2016. Doc. 58 at 2. The defense expects Dr. Wood to testify that "[Defendant's] actions over the past two decades are consistent with someone who sincerely believes in a

conspiracy" (*id.*), namely, that U.S. citizens are not required to pay federal income tax, that the government has suppressed this information, and that individuals who seek to expose it are subject to persecution. Doc. 58-1 at 2.

Dr. Wood has written a letter describing the scope of the testimony he is prepared to provide. *Id.* at 2-4. Dr. Wood will testify to two general propositions: (1) that certain people exhibit a "general conspiracy mentality," which makes them susceptible to belief in a wide variety of conspiracy theories; and (2) that "[e]xposure to a particular conspiracy theory is known to be a significant risk factor for belief in it." *Id* at 2-3. This testimony will be used to buttress Defendant's assertion that he has studied U.S. tax laws for years and has concluded that they do not apply to him. Dr. Wood is also prepared to testify to three specific propositions: (1) that Defendant possesses a "general conspiracy mentality"; (2) that Defendant exhibits "an extensive knowledge of the taxation-denial community"; and (3) that Defendant does not appear to be lying about his involvement in or agreement with the taxation-conspiracy subculture. *Id.* at 2-3. Defense counsel state that Dr. Wood will not testify that "Dr. Christensen genuinely believed he did not have to pay taxes" – presumably at the time he failed to pay them. Doc. 58 at 2.

The government stated at oral argument that it does not oppose Dr. Wood's testimony regarding the two general propositions listed above.[1] The government objects to the remainder of Dr. Wood's proposed testimony, arguing that it is not reliable or helpful within the meaning of Federal Rule of Evidence 702. Doc. 48 at 4-6. The government also argues that certain aspects of Dr. Wood's testimony would violate Rule 704(b) and the hearsay rules.

---

[1] It also is clear from oral argument that the government no longer asserts two arguments made in its motion: that Dr. Wood's testimony should be excluded for failure to comply with Federal Rule of Criminal Procedure 16(b)(1)(C) (Doc. 66 at 2-3), and that Dr. Wood's testimony is unhelpful because "Defendant has not established that a refusal to pay taxes is actually a conspiracy theory at all" (*id.* at 5).

## II. Analysis.

To be admissible, expert testimony must help the trier of fact understand the evidence or determine a fact in issue, and must be the product of "reliable principles and methods." Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing that the testimony satisfies Rule 702. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

### A. Helpfulness.

#### 1. Defendant's Current Mental State.

The government argues that Dr. Wood's testimony is based on Defendant's current beliefs, that those beliefs may differ from beliefs Defendant held when he engaged in the conduct at issue in this case, and that Dr. Wood's testimony therefore lacks foundation and would not be helpful to the jury. Doc. 66 at 4-5. The Court is not persuaded. In *United States v. Cohen*, 510 F.3d 1114 (9th Cir. 2007), the defendant was charged with willful violations of federal tax law. The defendant sought to admit expert testimony from a psychiatrist who examined him on two occasions shortly before trial. *Id.* at 1122. The psychiatrist was prepared to testify that the defendant suffered from narcissistic personality disorder which caused him to cling to his views about federal tax law despite overwhelming evidence that these views were incorrect. *Id.* at 1122-23. The district court excluded the testimony, finding that it was not helpful because it did not rule out the possibility that the defendant could have understood his legal duties. *Id.* at 1123. The Ninth Circuit reversed. *Id.* at 1124. The court explained that the testimony was helpful because it suggested that the defendant "had a tendency to cling doggedly to [his] beliefs even in the face of overwhelming contradictions," which bolstered his argument that he held a good faith belief that he was not subject to federal tax law. *Id.*

In *United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002), the defendant was charged with making a false claim against the United States after he attempted to pay off his tax debt with a negotiable instrument that was clearly bogus. *Id.* at 1004. The defendant sought to admit expert testimony from a psychologist who examined him twice

1 before trial. *Id.* at 1005. The psychologist was prepared to testify that the defendant had
2 "an atypical belief system," which caused him to reject information that was contrary to
3 his existing beliefs. *Id.* at 1005-06. The district court excluded the testimony under
4 Rule 702, in part because the testimony did not exceed the common knowledge of the
5 average lay person and in part because the jury should make its own determinations
6 regarding the sincerity of the defendant's beliefs. *Id.* at 1012. The Ninth Circuit
7 reversed, explaining that the testimony was helpful because it "would have offered an
8 explanation as to how an otherwise normal man could believe that these financial
9 instruments were valid and reject all evidence to the contrary." *Id.* at 1013. The court
10 acknowledged certain facts that cast doubt on the credibility of the psychologist's
11 testimony – including the subjective nature of his conclusions and his reliance on the
12 defendant's statements – but found that these weaknesses were properly addressed by the
13 government on cross-examination. *Id.* at 1014.

14 As these cases show, expert testimony about a defendant's current mental state
15 may be helpful to the extent it allows the jury to draw inferences about characteristics the
16 defendant had at the time of the charged offense. Dr. Wood will opine that certain people
17 exhibit a general conspiracy mentality which makes them susceptible to belief in a wide
18 variety of conspiracy theories, that repeated exposure to a particular conspiracy theory is
19 known to increase the odds of believing it, that Defendant possesses the characteristics of
20 a general conspiracy mentality, and that Defendant has had extensive exposure to the
21 views of the taxation-denial community. Like the opinions in *Cohen* and *Finley*, these
22 opinions concern mental characteristics that help explain why Defendant would accept
23 otherwise implausible views of the federal tax laws. The Court finds that this evidence
24 could be helpful to the jury's evaluation of the defense. The government certainly can
25 note that Dr. Wood's opinions were formed five or more years after the events at issue in
26 this case and may not reflect Defendant's mental state at the time, but these arguments go
27 to the weight, not the admissibility, of the opinions.

28

### 2. Defendant's Credibility.

Dr. Wood administered the Marlowe-Crowne Social Desirability Scale and found that Defendant's score was indicative of honesty. Doc. 58-1 at 3. Defendant proposes to have Dr. Wood testify that Defendant sincerely holds his beliefs regarding the U.S. tax laws. At oral argument, the government objected that such testimony would constitute impermissible vouching and would not be helpful. The Court agrees.

"In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *United States v. Charley*, 198 F.3d 1251, 1267 (10th Cir. 1999); *see also* Weinstein's Federal Evidence § 704.05. At least one court has applied this principle to exclude a defendant's results on a social desirability scale. *See United States v. White Horse*, 177 F. Supp. 2d 973, 976 (D.S.D. 2001) ("Dr. Janz further testified that the social desirability scale measures whether the subject is in all likelihood responding truthfully. Dr. Janz would testify that White Horse's score indicates he was responding truthfully. Assessing the reliability or credibility of a witness is the exclusive function of the jury.").

Dr. Wood's testimony that Defendant sincerely holds his beliefs is also inadmissible under Rule 704(b), which prohibits expert opinion in a criminal case on whether the defendant did or did not have the mental state constituting an element of the offense. In this case, the government must prove that Defendant's violation of the tax laws was willful. *Cheek*, 498 U.S. at 202. If credited, Dr. Wood's testimony – that Defendant sincerely believes that the tax laws do not apply to him – is tantamount to testimony that Defendant did not possess the willful mental state that is an element of the crime. Granted, Dr. Wood's testimony would be addressing Defendant's current mental state, not his mental state between 2004 and 2011, but, as noted above, the purported relevancy of Dr. Wood's testimony is that it reflects Defendant's thinking during the critical years in question. Because the purpose in presenting such an opinion is to persuade the jury that Defendant did not have the requisite mental state during the years

at issue, the Court concludes that the opinion would violate Rule 704(b) even though it might be couched solely in terms of the sincerity of Defendant's current beliefs.

Furthermore, Dr. Wood's testimony – that he has administered certain tests which show that Defendant is sincere in his belief that the tax laws do not apply to him – would be comparable to a polygraph expert who opines that his polygraph test shows the defendant to be sincere and truthful.  The Ninth Circuit has held that such testimony is inadmissible under Rule 704(b).  *United States v. Campos*, 217 F.3d 707, 711 (9th Cir. 2000); *see also Finley*, 301 F.3d at 1014-15.[2]

**B.     Reliability.**

The government initially argued that Dr. Wood's testimony regarding Defendant's current mental state was not reliable because he agreed to provide this testimony before interviewing Defendant or administering any tests.  Doc. 66 at 3-4.  Defense counsel explained at the final pretrial conference, however, that he prepared the report so as to give notice to the government of what he anticipated Dr. Wood would say after examining Defendant.  The report was not prepared by Dr. Wood before he examined Defendant.  The Court finds this to be a sufficient explanation.

The government argues that the tests administered by Dr. Wood to measure Defendant's propensity for conspiratorial thinking are not reliable.  Doc. 66 at 4.  Dr. Wood administered two such tests, the Generic Conspiracist Beliefs scale ("GCB") and the Single-Item Conspiracy Belief scale ("SICB").  Doc. 58-1 at 3.

The GCB has been described in a peer-reviewed academic journal as "a psychometrically sound and practically useful measure of conspiracist ideation."  Robert Brotherton, et al., *Measuring Belief in Conspiracy Theories: The Generic Conspiracist Beliefs Scale*, 4 Frontiers in Psych. 279 (2013).  The GCB has high internal reliability,

---

[2] Dr. Wood's testimony about the characteristics of people who believe in conspiracy theories, and that Defendant shares these characteristics, is not barred by Rule 704(b) because it does not directly address Defendant's mental state.  Rather, it presents "predicate matter from which jury might 'extrapolate' whether defendant possessed necessary *mens rea*," which is permissible under Rule 704(b).  *United States v. Morales*, 108 F.3d 1031, 1036-1038 (9th Cir. 1997); *see also* Weinstein's Federal Evidence § 704.06 (2015).

meaning that participants who were tested and later retested had very similar scores on the two tests. *Id.* The test has been discussed in other peer-reviewed articles. *See, e.g.*, Neil Dagnall, et al., *Conspiracy Theory and Cognitive Style: a Worldview*, 6 Frontiers in Psych. 206 (2015). Because the GCB has been subjected to peer review and publication and appears to be accepted within the psychological community as a sound method for measuring conspiratorial thinking, the Court concludes that it is sufficiently reliable for purpose of Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993).

The SICB has been described in a peer-reviewed academic journal as a "valid and reliable measure of belief in conspiracy theories." Anthony Lantian, et al., *Measuring Belief in Conspiracy Theories: Validation of a French and English Single-Item Scale*, 29 Int'l Rev. of Soc. Psych. 1, 7 (2016). The SICB has good internal reliability, with a 75% correlation between a participant's test and retest scores over a period of two weeks. *Id.* Although the newness of the SICB makes it difficult to tell whether the test will be accepted within the psychological community, the Court finds it sufficiently reliable for purpose of Rule 702, particularly when used alongside other peer-reviewed tests.

The government argues that both the GCB and the SICB are easily manipulated, because one can predict the effect a particular answer will have on the overall score. Doc. 66 at 5. Although this argument carries some force, the Court finds that it goes to the weight, not the admissibility, of Dr. Wood's opinions. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### C.     Other Objections.

The government also objects to any testimony in which Dr. Wood describes statements made by Defendant during their interview, arguing that such statements are hearsay. The Court is inclined to agree. Dr. Wood is not a clinical psychologist, so the exception in Rule 802 for statements made for purposes of medical diagnosis or treatment

does not apply. Nor would the statements be admissible under Rule 803(3) as statements of Defendant's then-existing state of mind. To be admissible under this rule, "[t]he statement must be contemporaneous with the mental state sought to be proven." Weinstein's Federal Evidence § 803.05 (2015). The mental state sought to be proven in this case is Defendant's mental state in 2004-2011. Defendant's statements to Dr. Wood in 2016 are not contemporaneous with those years. *See also United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc) ("The more time that elapses between the declaration and the period about which the declarant is commenting, the less reliable is his statement, because the greater chance there is that his memory is erroneous. The state of mind declaration also has probative value, because the declarant presumably has no chance for reflection and therefore for misrepresentation. The greater the circumstances for misrepresentation, the less reliable is the declaration.") (citation omitted). Dr. Wood is not precluded, however, from testifying to the conclusions he formed after considering Defendant's statements, provided experts in his field would reasonably rely on those kinds of statements in forming an opinion. *See* Fed. R. Evid. 703.

**III. Conclusion.**

Dr. Wood may opine that certain people exhibit a general conspiracy mentality which makes them susceptible to belief in a wide variety of conspiracy theories, that repeated exposure to a particular conspiracy theory is known to increase the odds of believing it, that Defendant possesses characteristics of a general conspiracy mentality, and that Defendant has extensive knowledge of the taxation-denial community. Dr. Wood may not testify that Defendant's beliefs are sincerely held or were truthfully recounted in their conversations, nor may Dr. Wood repeat hearsay statements made by Defendant during their communications.

1 **IT IS ORDERED** that the government's motion in limine (Doc. 48) is **denied in part and granted in part** as set forth above.

Dated this 10th day of May, 2016.

David G. Campbell
United States District Judge