**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-08164-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Gary Steven Christensen, | |
| Defendant. | |

Following a multi-day jury trial, Defendant was found guilty of seven counts of willfully evading taxes for the years 2004 through 2010, and two counts of willful failure to file tax returns for the years 2009 and 2010.  Doc. 101.  Defendant was acquitted on five counts of willfully filing false tax returns.  *Id.*  Defendant now moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c), and the issues are fully briefed.   Docs. 110, 118, 124.   For the reasons that follow, the Court will deny Defendant's motion.[1]

**A.    Sufficiency of the Evidence.**

Defendant argues that the government failed to present sufficient evidence to prove that he willfully violated the tax laws.  In determining the sufficiency of the evidence, the Court must view the evidence in the light most favorable to the government and deny the motion if any rational trier of fact could have found the elements of the

---

[1] Defendant's request for oral argument, made for the first time in his reply brief, is denied because the issues have been thoroughly briefed, the Court is very familiar with the trial of this case, and oral argument will not aid the Court's decision.

1    crime beyond a reasonable doubt.  *United States v. Atalig*, 502 F.3d 1063, 1066 (9th Cir.

2    2007).  The Court must also consider all reasonable inferences that can be drawn from the

3    evidence.  *United States v. Shea*, 493 F.3d 1110, 1114 (9th Cir. 2007).

4        In support of his motion, Defendant relies on a polygraph examination he took

5    before trial.  Doc. 110 at 2.[2]  But Defendant did not seek to admit the examination in

6    evidence during trial, and the Court therefore cannot rely on it in assessing whether the

7    government presented sufficient evidence to sustain the verdict.  In addition, polygraph

8    results are clearly inadmissible in a criminal case.  *See United States v. Alvirez*, __ F.3d

9    __, 2016 WL 4073312, at *7 (9th Cir. Aug. 1, 2016) ("In this circuit, it is well-

10   established that a polygraph examination may not be admitted to prove the veracity of

11   statements made during the examination.") (citing *United States v. Bowen*, 857 F.2d

12   1337, 1341 (9th Cir. 1988)).  Defendant appears to concede the inadmissibility of this

13   evidence in his reply.  *See* Doc. 124 at 4.

14       Defendant argues that the Court should consider his proffer to the government and

15   his insistence on going to trial rather than accepting a misdemeanor plea offer.  The Court

16   ruled before trial, however, that Defendant's plea negotiations, and his reasons for

17   rejecting the government's offer, were not admissible.  Doc. 75.  In light of this ruling,

18   which the Court continues to view as correct, Defendant cannot rely on his plea

19   negotiations as a basis for his Rule 29 motion.

20       Defendant also argues that he (a) testified at length about the basis for his belief

21   that citizens who earn income in the United States are not subject to income taxes,

22   presenting detailed exhibits and video clips in support of his belief; (b) presented expert

23   opinion that Defendant is susceptible to conspiracy theories and was forthcoming in his

24   interview with the expert; and (c) presented the testimony of his former accountant that

25   Defendant is very familiar with the tax laws and did not try to evade taxes.  Although it is

26   true that all of this evidence was presented at trial, the question presented by this motion

27

28

   [2] Throughout this order, citations will be to page numbers attached to the top of each page by the Court's CM/ECF system, not the page numbers in the actual documents.

is not whether the jury correctly weighed the evidence. The question is whether the government presented enough evidence for a rational jury to find that Defendant willfully violated the tax laws. *Atalig*, 502 F.3d at 1066. The Court concludes that the government presented ample evidence to support such a finding. That evidence includes the following:

- Defendant filed tax returns for some 20 years before the events at issue in this case; he stopped filing returns and paying taxes about the time he started earning substantial income.

- Defendant continued to prepare income tax returns for his mother throughout the period when he was filing no returns for himself.

- Defendant, a medical doctor and anesthesiologist, earned millions of dollars from Forest Country Anesthesia ("FCA") during the years in question, and failed to report any of it on individual income tax returns.

- Defendant created an entity called "GSC 00 Club" and arranged for his earnings from FCA to be paid to the Club rather than to him or his professional corporation. Defendant claimed that the Club was potentially going to be a health club, but admitted that it engaged in no health club activities.

- Defendant controlled all of the funds that flowed into and out of the Club, and used them for his personal benefit. He paid for his house, vehicles, groceries, cleaning services, and similar expenses with funds from the Club. The jury could have concluded that Defendant would not have funneled his income through the Club if he truly felt he was not subject to federal income taxes.

- Defendant never filed a tax return on behalf of the Club, nor did the Club pay employment, Medicare, or social security taxes for Defendant.

- Defendant regularly withdrew large sums of cash from the money he received from FCA. Defendant testified that he used the cash for gambling and dating, but the jury could have found that he regularly withdrew the cash to avoid leaving a paper record of his financial dealings.

- A managing partner of FCA testified that Defendant objected to FCA's filing of 1099 forms with the IRS showing the income FCA paid to Defendant. The jury could conclude from this evidence that Defendant wished to hide his earnings from the IRS, something he would not have bothered to do if he truly believed those earnings were not legally subject to taxation.

- Defendant received a ruling from the Arizona Department of Revenue in 2007 explaining the legal basis for his income tax liability, and yet continued not paying income taxes.

- Defendant was told repeatedly by the IRS that his legal position was frivolous.

- In 2009 and 2010, Defendant belatedly filed personal income tax returns for the years 1997 through 2008. Despite the fact that he had received hundreds of thousands of dollars in income from FCA during each of these years, the late-filed returns reported that Defendant had received no wages and no taxable income. In fact, Defendant actually claimed large losses and deductions on these returned, ranging from -$46,985 to -$113,936. Doc. 118-2 at 2. The returns listed some partnerships that Defendant owned and operated, but made no mention of the Club, into which Defendant was depositing all of his income and from which Defendant was paying his personal living expenses.

- Defendant testified that when he filed these returns, he purposefully crossed out the printed statement that he was filing them under penalty of perjury.

- Despite having belatedly filed personal income tax returns for 1997 through 2008, Defendant filed no personal tax returns for the years 2009 through 2015, and paid no income taxes for those years.

- Defendant engaged in his medical practice through a professional corporation, Gary S. Christenen, M.D., P.C ("PC"). Defendant filed tax returns for the PC for the years 1998 through 2007. For some of those years, Defendant showed the amount of income he received from FCA (for example, $347,000 in 2000), and yet he deducted a "cost of goods sold" amount approximately equal to his

- 4 -

income, resulting in minimal or no taxable income.  Defendant, as a doctor, was not in a business that sold goods, and his returns provided no explanation for the "cost of goods sold" he deducted.  In other years, the PC returns simply reported no income from FCA despite Defendant's hundreds of thousands of dollars in earnings from his medical practice in those years.

- Defendant purchased an airplane, placed it in an entity titled Forest Air LLC, flew it for his personal purposes, and paid expenses for the airplane through the Club.  Even though the airplane was used for personal uses and not as a business, Defendant claimed losses from Forest Air LLC in his belated personal tax return filings.

Perhaps most importantly, the jury was entitled to make credibility determinations. Defendant testified for some 12 hours about his view of federal tax law, presenting a diverse and often disconnected set of statutes, regulations, cases, and other sources to explain why he believes the law does not require United States citizens to pay taxes on income earned within the United States, but instead applies only to income earned by citizens abroad or to income earned by non-citizens in the United States.  Defendant showed the jury excerpts of video clips espousing similar views, but admitted on cross examination that he knew that some of the individuals making the presentations in those videos had been convicted of tax crimes.

The jury may have disbelieved Defendant's testimony about his personal views regarding the tax laws.  Defendant is an intelligent and educated man, and a successful doctor.  The jury may have found implausible Defendant's claim that he accepted the mélange of legal arguments he presented to the jury as a basis for failing to pay taxes on millions of dollars of personal income.  This conclusion could have been fortified by Defendant's tax return machinations, the efforts he made to place his money and airplane in separate entities, and his use of large sums of cash for his financial dealings.

Viewed in the light most favorable to the government, the evidence was more than sufficient to support the jury's finding of willfulness.

**B.      Confrontation Clause.**

Defendant argues that the Confrontation Clause was violated when IRS Special Agent Klepper provided testimony based on work performed by Revenue Agent Cris Corbin.   Defendant did not make this objection at trial, and the Court finds it unpersuasive for several reasons.

First, other evidence at trial was sufficient to establish a tax deficiency without Agent Klepper's testimony.  As the government notes, evidence of substantial unreported income may establish a tax deficiency.  *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000) (affirming denial of Rule 29 motion in tax evasion case where government presented evidence of unreported income); *see also United States v. Keller*, 523 F.2d 1009, 1012 (9th Cir. 1975) (holding evidence of unreported income was sufficient to establish tax deficiency); *United States v. Marcus*, 401 F.2d 563, 565 (2d Cir. 1968) (similar).  Defendant *stipulated* to the admission of evidence showing that he received hundreds of thousands of dollars in income from FCA in the years 2004 through 2010, and reported none of it to the IRS.  *See* Trial Ex. 77 (summary of payments from FCA to the Club) (filed at Doc. 118-1); Trial Ex. 76 (underlying records of payments); Doc. 83 (minute entry noting parties' stipulation to Exhibits 76-79); Doc. 103 at 14 (transcript of stipulated admission of these exhibits).  Defendant's substantial unreported income for each of the years in question, and the undisputed fact that he paid no income taxes in any of these years, was sufficient to establish a tax deficiency.

Second, Defendant complains that the Confrontation Clause was violated by admission of Exhibit 79, which consisted of Income Tax Discrepancy Adjustments for the years in question, prepared by Agent Corbin.  Doc. 118-3.  And yet Defendant *stipulated* to the admission of this exhibit at trial.  *See* Doc. 83 (minute entry noting parties' stipulation to admission of Exhibit 79); Doc. 103 at 14 (transcript of stipulated admission of Exhibit 79).  Thus, even if Defendant is correct that Mr. Corbin's analysis in Exhibit 79 was testimonial (a proposition the Court need not decide), the Confrontation Clause challenge based on that analysis fails because Defendant stipulated to its

admission.  "The right to confrontation may, of course, be waived, including by failure to object to the offending evidence[.]"  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313-14 n.3 (2009) (citation omitted); *see also United States v. Contreras-Rangel*, 414 F. App'x 943, 944 (9th Cir. 2011) (unpublished) ("If a defendant stipulates to the use of a statement against him, the defendant waives his right to confront the person making the statement.") (citation omitted).

Third, Defendant's argument appears to be that Agent Klepper's tax deficiency calculations were based on Agent Corbin's work, but Defendant did not object to those calculations at trial.  Defendant did object to Agent Klepper presenting a legal opinion on the tax deficiency, but he specifically agreed that Agent Klepper could testify about his calculations.  *See* Doc. 105 at 45 ("*I don't object to him doing the math*, Judge, I object to him rendering the legal conclusion that there is a deficiency that's owed.") (emphasis added); *id.* at 48 ("*Judge, I don't have an objection to the math. . . .  So if he wants to do math and stop short of saying . . . I have determined that Dr. Christensen owes a deficiency, then I don't have an objection*.") (emphasis added).  Defendant did not object during the remainder of Agent Klepper's direct testimony.[3]

Fourth, Defendant did not object to Agent Klepper's testimony on Sixth Amendment grounds or suggest that Agent Corbin was a necessary or foundational witness.  "A defendant who sincerely wants live testimony should make the demand, so that the declarant can be produced.  The lack of a demand for testimony by an available

---

[3] The Court rejected Defendant's argument that Agent Klepper could not testify about the tax deficiency in this case, noting that many cases have held that IRS agents are permitted to give such testimony.  *See* Doc. 105 at 100; *see also United States v. Windfelder*, 790 F.2d 576, 581 (7th Cir. 1986) ("Expert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence."); *United States v. Gold*, 743 F.2d 800, 817 (11th Cir. 1984) ("where an IRS agent merely state[s] his opinion as an accountant with regard to the tax consequences of a transaction, and d[oes] not attempt to assume the role of the court," the testimony is admissible); *United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980) ("Although the opinion on the deductibility of the interest was intimately related to the question of Clardy's guilt or innocence, it was still admissible. . . .  This court has previously held that opinion testimony, similar to that given by the Agent, is admissible[.]"); *Hans v. Tharaldson*, No. 3:05-CV-115, 2011 WL 6937598, at *1 (D.N.D. Dec. 23, 2011) ("IRS agents are routinely allowed to express opinions as to the tax consequences of a transaction in a criminal case[.]").

1   declarant leads to the conclusion that the appellate argument is strategic rather than

2   sincere." *United States v. Maxwell*, 724 F.3d 724, 728 (7th Cir. 2013).

3          Fifth, Agent Klepper did not use or refer to Agent Corbin's analysis during his

4   testimony. *See* Docs. 105, 106.[4]  Instead, Agent Klepper, who is a CPA, testified that his

5   calculations were based on Defendant's tax returns and transcripts, and the records of

6   Defendant's unreported income (Doc. 105 at 102-107), all of which were admitted by

7   stipulation.  There is no Confrontation Clause violation in this evidence, even if Agent

8   Klepper's calculations reached the same conclusions as Agent Corbin's.  *See, e.g.*,

9   *Maxwell*, 724 F.3d at 727 (holding Confrontation Clause was not violated where

10  testifying expert conducts his own testing that replicates testing by non-testifying

11  technician and reaches the same conclusion); *see also United States v. Stone*, 432 F.3d

12  651, 654 (6th Cir. 2005) (finding no Confrontation Clause violation where IRS agent's

13  opinions were based on documents properly admitted into evidence).  The Confrontation

14  Clause ensures that witnesses testify under oath, that their statements can be tested by

15  cross-examination, and that the jury can observe their demeanor.  *E.g.*, *United States v.

16  Chao Fan Xu*, 706 F.3d 965, 983 (9th Cir. 2013), *abrogated on other grounds by RJR

17  Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (June 20, 2016).  Agent Klepper

18  testified at trial, under oath, and was cross-examined by Defendant.[5]

19         Defendant argues at length in his reply that Agent Klepper did not perform any

20  "audit" of Defendant's taxes, and therefore necessarily relied on Agent Corbin's analysis.

21  Doc. 124 at 7-9, 12-13.  But the government did not suggest to the jury that audits were

22  performed.  Agent Klepper testified that audits were *not* performed.  Doc. 106 at 35.

23  Agent Klepper explained that he performed the calculations on Exhibit 78 using the

24

25         [4] Thus, Defendant's assertion that "Mr. Klepper testified to Mr. Corbin's

26  testimonial statements" (Doc. 124 at 5-6) is simply incorrect.

27         [5] Defendant argues that Agent Klepper used the word "we" four times during cross
    examination, suggesting that Agent Corbin was in fact involved in his calculations.

28  Doc. 124 at 14-15.  But Agent Klepper never testified that Agent Corbin was involved in
    his calculations, and his use of the word "we" may very well have been nothing more
    than a modest description of the work he did on behalf of the prosecution in this case.

1    income paid to Defendant by FCA, which was stipulated into evidence as Exhibit 77, and

2    belated tax returns filed by Defendant, which were also stipulated into evidence.

3    Doc. 105 at 102-07.  Defendant does not dispute that Agent Klepper was qualified to

4    perform these calculations – he is a CPA, worked for financial institutions, has been an

5    IRS Special Agent for 21 years, and has specialized tax training.  *Id.* at 40-41.  It simply

6    is not correct to assert that Agent Klepper merely repeated Agent Corbin's analysis.[6]

7           Sixth, the crux of Defendant's Confrontation Clause argument is that Agent

8    Corbin performed the "audit" that gave rise to the information contained in Exhibit 78

9    and Defendant never had an opportunity to cross-examine him.  In addition to the fact

10   that Defendant stipulated to admission of Exhibit 78 and the documents upon which it

11   relied, and the fact that Agent Klepper testified that he made the calculations in

12   Exhibit 78, Defendant makes no attempt to show that the relatively simple numbers and

13   calculations in Exhibit 78 are in any way incorrect.  Nor could he.  Exhibit 78 merely

14   reflects the undisputed amounts that Defendant was paid by FCA in years the 2004

15   through 2010.  Doc. 105 at 103.  From these annual amounts, Agent Klepper subtracted

16   the negative amounts of taxable income that *Defendant himself* reported in the belated

17   returns he filed in 2009 and 2010.  *Id.* at 105.  As Agent Klepper testified, "We took

18   those returns at face value."  *Id.*  Thus, Exhibit 78 actually gave Defendant the benefit of

19   his clearly overstated losses and deductions.  Agent Klepper then applied the published

20   tax rates to the resulting income, arriving at a tax deficiency of $562,083 for 2004

21   through 2010.  Doc. 118-2 at 2.  Agent Klepper readily admitted that this was an

22   "approximation" of Defendant's tax liability (Doc. 105 at 103-104), and Defendant

23   himself stipulated to the jury instruction stating that the government need not prove the

24   tax deficiency with precision.  If anything, Exhibit 78 significantly understated

25

26           [6] Defendant tries to make much of the fact that the government revised Exhibit 78
     to remove any reference to Agent Corbin's work, but this only weakens his Confrontation
27   Clause argument.  The government presented to the jury an exhibit that Agent Klepper
     testified he had created, using calculations he performed.  Defendant was able to cross-
28   examine him fully on this issue.  The government never attempted to present to the jury
     any work by Agent Corbin other than Exhibit 79, which Defendant stipulated into
     evidence.

Defendant's tax liability.  Stated differently, Defendant does not attempt to show, nor could he show, that Exhibit 78 inaccurately reflects his approximate tax liability.

Finally, the Court notes that Defendant's tax deficiency was never an issue at trial. Indeed, defense counsel told the jury at the beginning and end of the case that there was only one issue to be resolved – Defendant's willfulness.  Defendant did not dispute that he earned millions of dollars during the years in question, and he readily admitted that he never paid income taxes on those earnings.

For all of these reasons, the Court concludes that no Confrontation Clause violation occurred.

**C.     Sentencing Date.**

Defendant asks that the Court postpone his sentencing until after his appeal of the jury's verdict.  The Court will not do so.  An appeal will be ripe after a final judgment is entered, and a final judgment requires a sentence.  In addition, because Defendant may wish to challenge his sentence on appeal, postponing the sentencing until after an appeal of the verdict could result in the inefficiency of two appeals.

**IT IS ORDERED** that Defendant's motion for judgment of acquittal (Doc. 110) is **denied**.

Dated this 4th day of August, 2016.

_____
David G. Campbell
United States District Judge