**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>Gary Stevens Christensen,<br><br>Defendant/Petitioner, | No. CR-14-08164-PCT-DGC<br>No. CV-20-08152-PCT-DGC (DMF)<br><br>No. CV-18-08235-PCT-DGC (DMF)<br>(Related Case)<br><br>**ORDER** |

Petitioner Gary Christensen was convicted of multiple tax-related offenses. *See* Case No. CR-14-08164. He has filed a petition for writ of error *coram nobis* challenging the restitution order entered in the criminal case. CR Doc. 244; *see* CV Doc. 1.[1] The issues are fully briefed (CV Docs. 17, 24, 28), and oral argument will not aid the Court's decision, *see* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, the Court will grant the petition in part and deny it in part.

**I.      Background.**

In September 2014, a grand jury indicted Christensen on multiple counts of tax evasion, filing false tax returns, and failure to file tax returns for the 2004-2010 tax years.

---

[1] Christensen properly filed his petition in the criminal case because "a petition for the writ of error coram nobis is a step in the original criminal proceedings, not the beginning of a separate civil action." *Telink, Inc. v. United States*, 24 F.3d 42, 46 (9th Cir. 1994) (citing *Yasui v. United States*, 772 F.2d 1496, 1499 (9th Cir. 1985)). The Clerk of Court nonetheless opened a separate civil action when the petition was filed, Case No. CV-20-08152. Documents filed in the criminal case are cited as "CR Docs." Documents filed in the civil action are denoted "CV Docs."

1

CR Doc. 1; *see* 26 U.S.C. §§ 7201, 7203, 7206.  Christensen declined the government's plea offers and went to trial in May 2016.  The jury acquitted Christensen on the false tax return charges (counts eight through twelve), but found him guilty on each count of tax evasion (counts one through seven) and failure to file a tax return (counts thirteen and fourteen).  CR Docs. 95, 101.  He was sentenced to 42 months in prison followed by 3 years of supervised release.  CR Docs. 140, 146, 231.  He also was ordered to pay $1,603,533 in restitution to the Internal Revenue Service ("IRS").  *Id.*  The Ninth Circuit affirmed the conviction and sentence.  CR Doc. 166; *United States v. Christensen*, 705 F. App'x 599 (9th Cir. 2017).

Christensen moved to vacate his conviction under 28 U.S.C. § 2255 in September 2018, asserting claims of ineffective assistance of counsel.  Case No. CV-18-08235, Doc. 1.  The Court accepted Judge Fine's recommendation that the motion be denied.  *Id.*, Docs. 18, 24.  Christensen attempted to appeal the ruling, but the Ninth Circuit denied his request for a certificate of appealability.  *Id.*, Docs. 29, 32; *see United States v. Christensen*, No. 20-16072, 2020 WL 7048609 (9th Cir. Nov. 20, 2020).[2]

Christensen completed his prison sentence and started supervised release in December 2019.  *See* Federal BOP, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Jan. 13, 2021).  Shortly thereafter, the government sought to collect restitution.  Pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3205, multiple writs of garnishment against Christensen's property were issued in February and May 2020.  CR Docs. 181-92, 237.  Each garnishee filed an answer identifying property belonging to Christensen in its custody, possession, or control.  CR Docs. 215-27, 241.  The Court granted the government's motions for disposition orders on certain garnishments.  CR Docs. 245-52, 254, 265.[3]

---

[2] As explained more fully below, Christensen was not able to challenge the legality of the restitution order in his § 2255 motion – through claims of ineffective assistance of counsel or otherwise – because restitution may not be collaterally attacked under § 2255. *See United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999).

[3] Christensen has moved to quash the government's subpoena issued to Forest Aire, LLC.  CR Doc. 271.  The Court will address the motion to quash in a separate order.

Christensen filed the present petition for writ of error *coram nobis* in June 2020, arguing that the Court's restitution order must be vacated as unlawful. CR Doc. 244; CV Docs. 1, 17 (supplement). The government filed a response, and Christensen replied. CV Docs. 24, 28. The petition was referred to Judge Fine for a report and recommendation, but the Court elected to withdraw the referral in order to resolve this matter more quickly in light of the government's ongoing collection efforts. *See* CV Docs. 21, 29.

## II.     Legal Standard for a Writ of Error *Coram Nobis*.

The term "coram nobis" is Latin for "in our presence" or "before us." *See Nowlin v. United States*, 81 F. Supp. 3d 514, 519 (N.D. Miss. 2015) (citing *Black's Law Dictionary*, at 304-05 (5th ed. 1979)). At common law, a *coram nobis* writ was used by "a court to vacate its own judgments 'for errors of fact in those cases where the errors are of the most fundamental character, that is, such as rendered the proceeding itself invalid.'" *Flores v. Washington*, No. 2:18-CV-00177-SAB, 2018 WL 10509378, at *1 (E.D. Wash. Sept. 18, 2018) (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)); *see Raven v. Oklahoma*, No. CIV-16-289-D, 2016 WL 3950959, at *2 (W.D. Okla. June 14, 2016) ("Under the common law, 'the common law scope of coram nobis was a writ from the judgment-issuing court to itself, granting itself power to reopen that judgment.'") (quoting *Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013)).

In 1946, amendments to Federal Rule of Civil Procedure 60 expressly abolished writs of *coram nobis*. Fed. R. Civ. P. 60(e); *see Flores*, 2018 WL 10509378, at *1. Several years later, however, the United States Supreme Court "held that district courts have the power to issue the writ under the All Writs Act, 28 U.S.C. § 1651(a)."[4] *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002) (citing *United States v. Morgan*, 346 U.S. 502, 506-07 (1954)); *see United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989) (same); *United States v. Mischler*, 787 F.2d 240, 241 n.1 (7th Cir. 1986) ("[The] writ of error *coram nobis* is authorized by 28 U.S.C. § 1651 (1981) – the all writs provision of the

---

[4] The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

3

Judicial Code. While the writ was abolished in 1946 by the amendment of Fed.R.Civ.P. 60(b), it retains its vitality in criminal proceedings.") (citing *Morgan*); *Flores*, 2018 WL 10509378, at *1 (*Morgan* held that the abolition under Rule 60 "applied only to civil writs and that district courts retained authority to issue writs of coram nobis in collateral criminal proceedings"); *United States v. Stine*, No. CR 99-00155-PCT-JJT, 2018 WL 6030977, at *2 (D. Ariz. May 22, 2018) ("A writ of Coram Nobis . . . authorizes a court to vacate its judgment where errors are of the most fundamental character.") (citing *Morgan*).

The Supreme Court has observed that "the All Writs Act is 'a residual source of authority to issue writs that are not otherwise covered by statute,' and that, 'it is difficult to conceive of a situation in a federal criminal case today where the writ would be necessary or appropriate.'" *Stine*, 2018 WL 6030977, at *2 (quoting *Carlisle v. United States*, 517 U.S. 416, 429 (1996)). Indeed, both the Supreme Court and the Ninth Circuit "have long made clear that the writ of error *coram nobis* is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007) (citing *Morgan*, 346 U.S. at 511)); *see also Matus-Leva*, 287 F.3d at 760 ("*Coram nobis* is an extraordinary writ, used only to review errors of the most fundamental character."); *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) (describing the writ as "extraordinary").

"In *Hirabayashi*, consistent with the extraordinary nature of *coram nobis* relief, [the Ninth Circuit] adopted the following framework for deciding when the writ should be issued:

> A petitioner must show the following to qualify for *coram nobis* relief: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."

*Riedl*, 496 F.3d at 1006 (quoting *Hirabayashi*, 828 F.2d at 604, and noting that the Ninth Circuit has "repeatedly reaffirmed this framework") (citations omitted). "Because these

4

requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva*, 287 F.3d at 760 (citing *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991)).

### III. Christensen's *Coram Nobis* Petition.

Christensen contends that the restitution order is unlawful and *coram nobis* relief is warranted because: (1) the government's collection of a civil tax that has not been assessed violates the separation of powers under the United States Constitution; (2) tax collection in the guise of restitution must comply with the Internal Revenue Code; (3) the government did not prove at trial the actual amount of tax owed for the charged years; (4) the restitution order must be assessed as a civil tax under 26 U.S.C. § 6201(a)(4) and then collected by the IRS, not the Department of Justice; (5) more than $1 million of the restitution amount consists of back taxes for years not covered by the convictions; and (6) Christensen was ordered to pay restitution while incarcerated. CV Doc. 1 at 1-2. The government argues that the restitution order is entirely legal and that Christensen has failed to meet the rigorous test for *coram nobis* relief. CV Doc. 24. The Court will address Christensen's arguments using *Hirabayashi*'s four-part test for *coram nobis* relief.

#### A. A More Usual Remedy Is Not Available.

Because a § 2255 motion cannot be used to challenge restitution, the government agrees that the first prong of the *Hirabayashi* test is satisfied – a more usual remedy is not available. CV Doc. 24 at 9 & n.2 (citing *Kramer*, 195 F.3d at 1130); *see United States v. Thiele*, 314 F.3d 399, 401 (9th Cir. 2002) ("We agree with the district court that *Kramer* controls and that Thiele cannot collaterally attack his restitution order in a § 2255 motion.").[5]

#### B. Valid Reasons Exist for Not Attacking the Restitution Order Earlier.

"A *coram nobis* petition is not subject to a specific limitations period." *United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020) (citing *United States v. Kwan*, 407

---

[5] The criminal restitution statute, 18 U.S.C. § 3664, also provides Christensen no avenue for relief in this post-conviction context. *See United States v. Wyss*, 744 F.3d 1214, 1218 (10th Cir. 2014) (discussing the exceptions to the finality of a restitution order set forth in § 3664(o)); *United States v. Rooney*, No. 3:01-CR-231-D, 2014 WL 3865974, at *4 & n.1 (N.D. Tex. Aug. 6, 2014) (same).

F.3d 1005, 1012 (9th Cir. 2005)). "[C]ourts have denied relief for unjustified delay where 'the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ.'" *Id.* (quoting *Kwan*, 407 F.3d at 1013); *see also Telink*, 24 F.3d at 47 ("In concluding that the coram nobis petition will not be subject to an arbitrary limitations period, we instead adopt a 'flexible, equitable time limitation' based on laches. A district court is free at any time to apply laches to a coram nobis petition, if the petitioner inexcusably delays in asserting his claims and the government is prejudiced by the delay.") (internal citation omitted).

The government contends that Christensen has identified no valid reason for delaying his challenge until several years after his conviction. CV Doc. 24 at 9-10. The Court does not agree. Christensen argues – correctly, as explained below – that the Court had no authority to order restitution for back taxes outside of the tax years for which he was convicted, that doing so constituted plain error, and that neither the prosecutor, the Court, nor his trial and appellate attorneys were aware of the error. CV Doc. 1 at 15-16. Christensen further explains that the attorney he hired to present his *coram nobis* arguments withdrew when his fees were garnished by the government. *Id.* at 15; *see* CR Docs. 235, 238.

The Court cannot conclude that Christensen delayed "for no reason whatsoever," *Kroytor*, 977 F.3d at 961, or that he is abusing the writ of *coram nobis*. Acting pro se, he has identified a legal error that no lawyer in this case – including the undersigned judge – discovered. That it took some time for him to uncover the error is quite understandable, and the government has not established prejudice from the delay. *Id*. Christensen therefore meets the second prong of the *Hirabayashi* test – he has presented a valid reason for not attacking the restitution order earlier. *See Riedl*, 496 F.3d at 100.

**C.     Sufficient Adverse Consequences Exist.**

Christensen argues that the garnishments sought by the government constitute adverse consequences from the restitution order sufficient to satisfy the "case or controversy" prong of the *Hirabayashi* test. CV Doc. 1 at 16. The Court agrees.

Christensen challenges more than one million dollars of restitution, arguing that this amount should not be collected because it was erroneously imposed for back taxes outside of the tax years for which he was convicted.  CV Docs. 1 at 10-15, 28 at 1-2.  The Court concludes that an alleged restitution error of this magnitude clearly satisfies the case or controversy requirement of Article III.  *See United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990) (*coram nobis* relief may be available where the adverse consequence is causing present harm, arises out of the erroneous conviction, and is more than incidental); *United States v. Shihadeh*, No. 03-CR-46, 2007 WL 325797, at *2 (E.D. Wis. Jan. 31, 2007) (same).

The government cites *United States v. Sloan*, 505 F.3d 685, 698 (7th Cir. 2007), for the proposition that "[t]he alleged financial injury suffered by [D]efendant as a result of the restitution order 'cannot be classified as the sort of civil disability that can support the issuance of the writ of coram nobis.'"  CV Doc. 24 at 10.  But in other cases, the Seventh Circuit has recognized that a defendant may seek *coram nobis* relief from an unlawful restitution order.  In *Barnickel v. United States*, 113 F.3d 704 (7th Cir. 1997) – which the government cites in agreeing that a more usual remedy is not available (CV Doc. 24 at 10 n.2) – the Seventh Circuit noted that "the unavailability of relief under § 2255 does not leave a deserving petitioner entirely without recourse [as the court has] approved the use of a writ of error coram nobis to challenge a restitution order that was based on inaccurate information."  *Id.* at 706; *see Mischler*, 787 F.2d at 241 n.1 ("We believe that the fundamental unfairness of the district court in not considering the accuracy of the . . . audit upon which the restitution order was based warrants *coram nobis* consideration. . . . . [W]e are mindful of the *Morgan* Court's [statement] that, 'in behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief.'") (quoting *Morgan*, 346 U.S. at 505); *see also Kaminski v. United States*, 339 F.3d 84, 90 (2d Cir. 2003) ("To say that habeas challenges are restricted to those situations in which freedom from custody is at stake is not to foreclose other collateral attacks in some cases where lesser interests are involved.  Indeed, the Seventh Circuit in *Barnickel* . . . has said that it

7

is precisely in such cases that the writ of coram nobis may be used.") (Calabrasi, J., opining separately); *Nimkie v. United States*, No. CIV. 12-00350 JMS, 2012 WL 5590111, at *4 (D. Haw. Nov. 15, 2012) ("Although a § 2255 motion challenging a restitution award necessarily fails, the court recognizes that some authority allows – in limited situation – such relief to be sought under a writ of error coram nobis.") (citing *Barnickel* and *Kaminski*).

The Court recognizes that there is a split of authority on whether *coram nobis* relief is available to attack a restitution order. *Compare Barnickel with United States v. Singh*, No. 4:17-CR-193, 2020 WL 4192899, at *3 (E.D. Tex. July 20, 2020) ("the Fifth Circuit has held that 'a district court lacks jurisdiction to modify a restitution order under § 2255, a writ of coram nobis, or 'any other federal law'") (quoting *Campbell v. United States*, 330 F. App'x 482, 483 (5th Cir. 2009)); *see also Carnesi v. United States*, 933 F. Supp. 2d 388, 393 (E.D.N.Y. 2013) ("the law in the Second Circuit is unclear as to whether a writ of error coram nobis may be available to challenge an order of restitution"); *Maguire v. United States*, No. CIV.A.05-12508-GAO, 2008 WL 3523175, at *1 n.1 (D. Mass. Aug. 12, 2008) ("Apparently some courts have suggested that they could be open to the proposition that the writ of coram nobis may be available to 'correct' restitution orders, *see, e.g.*, *Barnickel*[,] . . . but the First Circuit has not addressed that question."). The parties cite, and the Court has found, no Ninth Circuit case on this issue.

The Court's reading of Supreme Court statements on the availability of *coram nobis* relief leads it to conclude that such relief is available in this case. In *Morgan*, the Supreme Court considered whether *coram nobis* relief was available to a defendant who had asserted a violation of the right to counsel. 346 U.S. at 504. The district court treated the proceeding as a motion under § 2255 and denied relief because the defendant had served his sentence and therefore no longer was in custody. *Id.* The Second Circuit reversed, finding that "§ 2255 did not supersede 'all other remedies which could be invoked in the nature of the common law writ of error coram nobis.'" *Id.* The Supreme Court agreed and provided this explanation:

> The contention is made that § 2255[,] providing that a prisoner 'in custody' may at any time move the court which imposed the sentence to vacate it, if 'in violation of the Constitution or laws of the United States,' should be construed to cover the entire field of remedies in the nature of coram nobis in federal courts. We see no compelling reason to reach that conclusion. In *United States v. Hayman*, 342 U.S. 205, 219 [(1952)], we stated the purpose of § 2255 was 'to meet practical difficulties' in the administration of federal habeas corpus jurisdiction. We added: 'Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions.' We know of nothing in the legislative history that indicates a different conclusion. We do not think that the enactment of § 2255 is a bar to this motion, and we hold that the District Court has power to grant such a motion.

*Id.* at 510-11; *see Telink*, 24 F.3d at 45 ("The [coram nobis] petition fills a very precise gap in federal criminal procedure. A convicted defendant in federal custody may petition to have a sentence or conviction vacated, set aside or corrected under the federal habeas corpus statute, 28 U.S.C. § 2255. However, if the sentence has been served, there is no statutory basis to remedy the 'lingering collateral consequences' of the unlawful conviction. Recognizing this statutory gap, the Supreme Court has held that the common law petition for writ of error coram nobis is available in such situations, even though the procedure authorizing the issuance of the writ was abolished for civil cases by [Rule] 60(b).") (citing *Morgan*; internal citations omitted); *United States v. Harkonen*, No. 08-CR-00164-RS-1, 2015 WL 4999698, at *5 (N.D. Cal. Aug. 21, 2015), *aff'd*, 705 F. App'x 606 (9th Cir. 2017) ("[The writ] bridges the 'very precise gap' in federal criminal procedure for post-conviction defendants for whom relief to have a sentence or conviction vacated, set aside or corrected under the federal habeas corpus provision, 28 U.S.C. § 2255, is unavailable because they have already completed their time in federal custody. While Fed.R.Civ.P. 60(b) abolished this remedy in civil cases, the Supreme Court has thus maintained its availability in the criminal context.") (citing *Telink*, 24 F.3d at 45); *Velazquez v. United States*, No. CV-11-00820-PHX-RCB, 2014 WL 2738524, at *7 (D. Ariz. June 17, 2014), *aff'd*, 651 F. App'x 620 (9th Cir. 2016) ("[I]n the Ninth Circuit's view, [the writ] should be 'used only to review errors of the most fundamental character,

and filling a very precise gap in federal criminal procedure.'") (quoting *Reidl*, 496 F.3d at 1005; alterations omitted).

Christensen has met the third *Hirabayashi* requirement – sufficient adverse consequences – and *coram nobis* relief is available to correct the fundamental error in his restitution order. *See Carnesi*, 933 F. Supp. 2d at 394 ("[T]his Court finds the Seventh Circuit and Judge Calabresi's opinion in *Kaminski* persuasive. . . . As such, the Court finds that a writ of error coram nobis may be used to challenge a court's order of restitution."); *United States v. Shihadeh*, No. 03-CR-46, 2007 WL 325797, at *2 n.1 (E.D. Wis. Jan. 31, 2007) ("[B]ecause defendant focuses on the restitution order, which may not be challenged under § 2255, I will construe his request as one for coram nobis relief."); *United States v. Maasen*, No. CR 16-01357-PHX-DGC, 2020 WL 3064495, at *3 (D. Ariz. June 9, 2020) ("[Ineffective assistance of counsel] in connection with imposition of restitution, if established, can constitute error of the most fundamental character for coram nobis relief.") (citing *Nimkie*, 2012 WL 5590111, at *5-6).

### D. Error of the Most Fundamental Character.

#### 1. Christensen's Unsuccessful Arguments.

In seeking to have the restitution order vacated entirely, Christensen makes several arguments that are variations on the same theme: courts cannot order restitution in criminal tax cases because only the IRS can assess and collect federal taxes. Specifically, Christensen asserts that the government's collection of a civil tax that has not been assessed by the IRS violates the separation of powers because the Sixteenth Amendment vests authority to lay and collect federal taxes in Congress; that tax collection "in the guise of restitution" must still comply with the Internal Revenue Code; and that the restitution order must be assessed as a civil tax under 26 U.S.C. § 6201(a)(4) and then collected by the IRS. CV Docs. 1 at 1-14, 17 at 1-2, 28 at 3.

In *United States v. Batson*, 608 F.3d 630 (9th Cir. 2010), however, the Ninth Circuit held that "the Supervised Release Statute, [18 U.S.C. § 3583(d),] together with the Probation Statute, [18 U.S.C. § 3563(b)(2),] unambiguously authorizes federal courts to

order restitution as a condition of supervised release for *any* criminal offense, including one under Title 26 [the tax code], for which supervised release is properly imposed." 608 F.3d at 635 (emphasis in original); *see United States v. Brugnara*, 455 F. App'x 761, 763 (9th Cir. 2011) (citing *Batson* and holding that "[t]he district court had authority to order restitution as a condition of supervised release for Brugnara's tax convictions"); *United States v. Alvarez*, 835 F.3d 1180, 1185 (9th Cir. 2016) (*Batson*'s holding authorizing restitution as a condition of supervised release "remains good law"); *United States v. Hassebrock*, 663 F.3d 906, 924 (7th Cir. 2011) ("[I]t is clear that district courts possess the authority to impose restitution for tax offenses as a condition of supervised release.") (citing *Batson*). The Court's authority to order restitution for Title 26 offenses is also explicitly recognized in the Sentencing Guidelines. *See* U.S.S.G. § 5E1.1(a)(2); *Batson*, 608 F.3d at 635-36; *Hassebrock*, 663 F.3d at 924.

As the government correctly notes, Christensen selectively chooses and misreads parts of the tax code and inapposite case law. CV Doc. 24 at 6. He cites no authority holding that restitution in criminal tax cases can be imposed only where the restitution amount has been assessed by the IRS. Nor has he shown that such restitution must be collected by the IRS and not the Department of Justice. *See In re Jara*, No. 14-80057-G3-13, 2015 WL 542408, at *4 (Bankr. S.D. Tex. Feb. 5, 2015) ("an assessment of tax liability . . . is related to *but separate from* the imposition of criminal restitution payments set forth in a criminal judgment") (emphasis added). Christensen's arguments are defeated by the Ninth Circuit's holding in *Batson* that courts can order restitution in criminal tax cases as a condition of supervised release. *See* CV Doc. 24 at 13; *Batson*, 608 F.3d at 635.

Christensen further argues that the government did not prove at trial the "actual amount" of tax due and owing for the charged years. CV Docs. 1 at 2, 11-13; 28 at 2-3. But in ordering restitution, a district court must make only "a reasonable estimate of the loss, given the available information." *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010) (quoting *United States v. Bussell*, 504 F.3d 956, 960 (9th Cir. 2007)). The loss calculation in this case was based on a review of Christensen's financial records and IRS

worksheets prepared by IRS examiner Cris Corbin. CR Doc. 135-1 (Forms 4549-A). Mr. Corbin determined Christensen's approximate taxable income for each year in question and the resulting tax owed. *Id.*; *see* CR Doc. 136 ¶¶ 6-17 (presentence report).

The government's alleged failure to prove the precise dollar amount of loss does not render the restitution order erroneous. *See Ali*, 620 F.3d at 1074 (there was "sufficient indicia of reliability for the district court to have relied on [IRS] spreadsheets" in calculating loss from the defendant's fraud and money laundering offenses); *United States v. Sunchild*, 637 F. App'x 316, 317 (9th Cir. 2016) ("As $19,735.77 was a 'reasonable estimate' based on evidence supported by 'sufficient indicia of reliability,' the district court did not err.") (citing *Ali*, 620 F.3d at 1073); *United States v. Doe*, 488 F.3d 1154, 1161 (9th Cir. 2007) (upholding restitution amounts that were "supported by the record as reasonable estimates of the loss"); *United States v. Padilla*, No. 4:17-CR-00137-DCN, 2018 WL 4365494, at *1 (D. Idaho Sept. 13, 2018) ("[T]he determination of the restitution amount is by nature an inexact science, and . . . the court may accept a reasonable estimate of the loss based on the evidence presented.") (citations and quotation marks omitted); *In re Jara*, 2015 WL 542408, at *3 ("An order to pay restitution [for Title 26 offenses] is a criminal penalty . . . based upon an estimation of civil tax liability[.]").[6]

Christensen also contends that the restitution order is unlawful because he was required to pay restitution while incarcerated. CV Doc. 1 at 2, 14; *see* CR Doc. 140 at 2 (noting that, if incarcerated, "payment of criminal monetary penalties are due during imprisonment at a rate of not less than $25 per quarter"). But while there are strong incentives to participate in the Bureau of Prison's inmate financial responsibility program, the program is voluntary and Christensen could have refused to participate. *See* 28 C.F.R. § 545.11(b). Moreover, Christensen does not dispute that of the $800 he paid through the program, only $50 went toward his restitution obligation – the rest went to pay his $750

---

[6] *See also United States v. George*, 949 F.3d 1181, 1188 (9th Cir. 2020) (noting that "the judge, rather than a jury, determine[s] the amount of the loss"); *United States v. Green*, 722 F.3d 1146, 1149 (9th Cir. 2013) ("Our own court . . . has categorically held that *Apprendi* and its progeny . . . don't apply to restitution.") (citations omitted).

special assessment. *See* CV Doc. 24 at 6; 28 C.F.R. § 545.11(a) ("The financial plan developed shall be documented and will include the following obligations, ordinarily to be paid in the priority order as listed: (1) Special Assessments imposed under 18 U.S.C. [§] 3013; (2) Court-ordered restitution[.]"). Christensen's $50 restitution payment while incarcerated does not constitute a fundamental error warranting *coram nobis* relief. *See* 18 U.S.C. § 3664(f)(3)(B) ("A restitution order may direct the defendant to make nominal periodic payments[.]"); *United States v. Curran*, 460 F. App'x 722, 725 (9th Cir. 2011) ("[G]iven the fairly nominal nature of the restitution payments of $25 per month while incarcerated[,] . . . the payment schedule the court ordered was not an abuse of discretion.").

None of these arguments establishes the fundamental error required for *corum nobis* relief. The Court will deny Christensen's petition to the extent it seeks to eliminate the entire restitution obligation.

### 2.  Successful Argument.

Christensen contends that the restitution order is unlawful because the estimated tax loss for the years covered by his conviction (2010-2014) is less than $600,000, and that more than $1 million of the restitution amount is for back taxes in years not covered by his conviction (1997-2003 and 2011-2015). CV Docs. 1 at 2, 10-14; 28 at 2-3; *see* CR Doc. 136 ¶¶ 6-17. The Court agrees.

In *Batson*, the Ninth Circuit joined its "sister circuits in holding that an award of restitution ordered as a condition of supervised release can compensate 'only for the loss caused by the specific conduct that is the basis of the offense of conviction,' so long as that offense does not involve an element of scheme, conspiracy or pattern of criminal activity." 608 F.3d at 637 (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)); *see also United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999). The government correctly notes that both this Court and the Ninth Circuit found that Christensen's tax evasion from 1997 through 2015 was part of a scheme and ongoing pattern of criminal activity. CV Doc. 24 at 8. But these findings were made for purposes of determining the loss amount to be

13

used in calculating Christensen's sentencing guideline range. *See* CR Docs. 136 at 8-9, 141 at 29-30; *Christensen*, 705 F. App'x at 600.

More is required before losses can be included in the restitution amount. The scheme, conspiracy, or pattern of criminal activity must be an element of the offense of conviction. *See Batson*, 608 F.3d at 637 (other losses may be included when "the crime of conviction includes *as an element* a scheme, conspiracy or pattern of criminal activity") (emphasis added); *Lawrence*, 189 F.3d at 846 ("only when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity *as an element of the offense*, may the restitution order include acts of related conduct for which the defendant was not convicted") (emphasis added); 18 U.S.C. § 3663(a)(2) (including in definition of "victim," for restitution purposes, persons harmed by "an offense that involves *as an element* a scheme, conspiracy, or pattern of criminal activity") (emphasis added).

The statutes under which Christensen was convicted – 26 U.S.C. §§ 7201 and 7203 – do not include a scheme, conspiracy, or pattern of criminal activity as an element of the offense. *See* CR Doc. 102 at 16, 18 (final jury instructions). Thus, the Court may "order restitution only of back taxes for the years involved in the conviction[s]." *United States v. Green*, 735 F.2d 1203, 1205 (9th Cir. 1984); *see Batson*, 608 F.3d at 637. The Court accordingly concludes that it erred in ordering restitution in excess of that resulting from the offenses of conviction (counts one through seven, thirteen, and fourteen), and that the seven-figure error is fundamental for purposes of *coram nobis* relief. *See Batson*, 608 F.3d at 637. The Court will grant Christensen's *coram nobis* petition on this point and reduce the amount of restitution he must pay to the IRS. *See Morgan*, 346 U.S. at 506-07; *Rawlins*, 714 F.3d at 1196 ("coram nobis [is] a writ from the judgment-issuing court to itself, granting itself power to reopen that judgment.").[7]

---

[7] The government asserts that "[a] fundamental error that invalidates a criminal proceeding is one that undermines our confidence that the defendant is actually guilty." CV Doc. 24 at 11 (quoting *United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2018)). But as noted, the Seventh Circuit and other courts have approved the use of a writ of error *coram nobis* to challenge a restitution order. *See Barnickel*, 113 F.3d at 706; *Mischler*, 787 F.2d at 241 n.1; *Nimkie*, 2012 WL 5590111, at *4. Not all restitution errors will rise to the level of fundamental error required for *corum nobis* relief, but the Court concludes that a

Christensen contends that the tax due and owing for 2010-2014 is $562,083. CV Doc. 1 at 11-12; *see* CR Doc. 136 ¶ 6. The government asserts that the correct amount is $579,706. CV Doc. 24 at 11 n.3. Christensen's lower figure appears to be based on $332,955 in taxable income for 2010, but this amount did not include unreported income of $57,006 that Christensen received from ING Life Insurance and Annuity. *See* CR Doc. 135-1 at 28, 40 & n.1. This additional income raised the tax due for 2010 from $101,544 to $119,169 (a $17,625 difference). The Court concludes that the proper restitution amount is $579,706, not $1,603,533. *See* CR Docs. 140, 146, 231.[8]

As the government notes, the Court has authority to impose prejudgment interest as part of a restitution order. CV Doc. 24 at 11 n.3 (citing *United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013) (affirming inclusion of interest in restitution to IRS); *United States v. Gordon*, 393 F.3d 1044, 1058-59 (9th Cir. 2004) (ordering prejudgment interest to make victim whole)); *see also United States v. Adams*, 955 F.3d 238, 251-52 (2d Cir. 2020). ("[B]ecause a district court must 'order restitution to each victim in the full amount of each victim's losses,' 18 U.S.C. § 3664(f)(1)(A); *see id.* § 3556, and because prejudgment interest is part of the government's loss when delinquent taxes are not timely paid, the district court properly included accrued interest in the restitution amount[.]"); *United States v. Smith*, 944 F.2d 618, 626 (9th Cir. 1991) ("We have repeatedly held that [18 U.S.C. § 3663] authorizes restitution for a victim's 'actual losses.' Foregone interest is one aspect of the victim's actual loss, and thus may be part of the victim's compensation.") (internal citation omitted). At sentencing, the Court declined to include prejudgment interest in the restitution amount, noting that "a $1.6 million restitution amount is going to be difficult enough as it is for [Christensen] to satisfy, and there is no point in almost doubling the amount with prejudgment interest." CR Doc. 141 at 72-73. Now that the restitution

---

$1 million error, to be paid by an individual, clearly satisfies this requirement. *See Maguire*, 2008 WL 3523175, at *1 n.1 (denying the petition but noting "there may be a case that would present facts" sufficient to warrant *coram nobis* relief from an erroneous restitution order).

[8] There is a $2.00 difference in the parties' figures from the 2009 tax year, and the Court cannot account for this discrepancy on the present record. *See* CV Doc. 1 at 12; CR Doc. 135-1 at 27, 40 ($91,307 vs. $91,305 due for 2009). This is an inconsequential sum.

15

amount has been reduced by more than 60%, the Court concludes that prejudgment interest should be included. For years, Christensen has had the benefit of the $579,706 in taxes he did not pay, and the government was denied its use. Prejudgment interest will help make the government whole for the taxes wrongfully withheld. The Court will include $202,816.19 in prejudgment interest in the restitution amount owed by Christensen. *See* CV Doc. 24 at 11 n.3; CR Doc. 137-1 at 2 (sentencing memorandum listing interest on the tax due for the 2004-2010 tax years).

**IT IS ORDERED** that Christensen's petition for writ of error *coram nobis* (CR Doc. 244; CV Doc. 1) is **granted in part** and **denied in part** as set forth in this order. The Court's judgment will be amended to require that he pay restitution to the Internal Revenue Service in the amount of **$782,522.19**.

Dated this 19th day of January, 2021.

David G. Campbell
Senior United States District Judge

16